

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAVID GLENN BERRY**                    **CIVIL ACTION**

**VERSUS**                               **NO:        00-0599**

**BURL CAIN**                            **SECTION: "J" (4)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct

hearings, including an Evidentiary Hearing, if necessary, and to submit Proposed Findings and

Recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as

applicable, Rule 8(b) of the Rules Governing § 2254 Cases.  Upon review of the entire record,

the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See*

28 U.S.C. § 2254(e)(2).[1]

DATE OF ENTRY

JAN 2 9 2001

JAN 2 9 2001

DATE OF MAILING

---

[1]  Under 28 U.S.C. § 2254(e)(2), whether to hold an Evidentiary Hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court may hold an Evidentiary Hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(I), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

Fee_____
Process_____
X /Dktd_____
✓ CtRmDep_____
Doc.No._____

## I.    Factual Background

In the early morning hours of August 2, 1995, David Berry, armed with a kitchen knife, awakened his fifteen year old step-daughter.[2] He threatened to kill her, forced her to engage in sexual intercourse and fellatio on several occasions.[3] After molesting her, Berry then forced her to wake up her fourteen year old sister who he raped several times.[4] He alternated between the girls, forcing the older step-daughter to watch him rape the younger sister.  Mrs. Berry and their ten year old brother were asleep in the home while the girls were being raped.[5] He raped the girls for two hours and then sent them to their rooms in anticipation that his wife would wake up around 6:00 a.m.[6] Later that morning, after their mother left for work,  Berry continued to molest the two girls for another hour.[7]

The next day, the youngest daughter told a friend that her step-father raped and sexually assaulted her.  She asked her friend to convey the information to her mother.[8] Thereafter, the friend's mother contacted the younger victim and convinced her to report the incident to her

---

[2]  St. Rec. Vol. 4 of 5, p. 870, Trial Transcript Vol. IV, p. 43.

[3]  St. Rec. Vol. 4 of 5, p. 870-73, Trial Transcript Vol. IV , p. 43-46.

[4]  St. Rec. Vol. 4 of 5, p. 873-74, Trial Transcript Vol. IV, p. 46-47.

[5]  St. Rec. Vol. 2 of 5, p. 448, Trial Transcript Vol. II, p. 41; St. Rec. Vol. 4 of 5, p. 825, 875, and 877, Trial Transcript Vol. IV, p. 8, 48, and 50.

[6]  St. Rec. Vol. 4 of 5, p. 875, Trial Transcript Vol. IV, p. 48.

[7]  St. Rec. Vol. 2 of 5, p. 451-456, Trial Transcript Vol. II, p. 44-49; St. Rec. Vol. 4 of 5, p. 876-78, Trial Transcript Vol. IV, p. 49-51.

[8]  St. Rec. Vol. 4 of 5, p. 878-79, Trial Transcript Vol. IV, p. 51-52.

mother, which she and her sister eventually did.[9] Berry was then arrested and charged with three counts of aggravated rape and four counts of aggravated crimes against nature.

## II.   Procedural History

### A.   Grand Jury Indictment

On May 9, 1995, the Twenty Second Judicial District Court for St. Tammany Parish, Louisiana selected a pool of one-hundred individuals to serve as potential grand jurors.[10] On June 14, 1995, a grand jury was impaneled to serve a term of six months.[11]  On September 27, 1995, the grand jury issued an indictment against David Berry on three counts of aggravated rape and four counts of aggravated Crimes against nature.[12]

### B.   Pretrial Hearing

Prior to trial, Berry's counsel filed a Motion in Limine to exclude the admission of DNA evidence.[13]  On November 18, 1996, the trial court conducted a hearing on the State's notice of intent to use DNA evidence and the motion in limine to exclude the evidence.[14] At the hearing,

---

[9] St. Rec. Vol. 2 of 5, p. 458-462, Trial Transcript Vol. II, p. 51-55; St. Rec. Vol. 4 of 5, p. 878-879, Trial Transcript Vol. IV, p. 51-52.

[10] St. Rec. Vol. 1 of 5, p. 1, List of Grand Jury Pool, 5/9/95.

[11] St. Rec. Vol. 1 of 5, p. 11, Extract of Minute Entry, 6/14/95.

[12] St. Rec. Vol. 1 of 5, p. 45, Indictment filed 9/27/95.

[13] St. Rec. Vol. 1 of 5, p. 101, Defendant's Motion in Limine to exclude DNA, 11/13/96.

[14] St. Rec. Vol. 1 of 1, p. 25, Extract of Minutes, 11/18/96; St. Rec. Vol. 1 of 5, p. 205-248, Trial Transcript Vol. I, p. 4-47.

the court heard testimony from the State's DNA expert.  The trial court denied the motion permitting the admission of the DNA evidence.[15]

### C.     Trial by Jury

On November 19, 1996, Berry's jury trial began.  After three days of testimony, the jury returned a unanimous verdict of guilty on  all counts.[16]  On December 6, 1996, Berry was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence on the three counts of aggravated rape.  He was sentenced to fifteen years imprisonment  without the benefit of parole, probation, or suspension of sentence on the remaining counts of aggravated crimes against nature.[17]  The sentences were ordered to run concurrently and Berry was given credit for time served.[18]

### D.     Direct Appeal

On December 6, 1996, Berry filed a Motion for Appeal, challenging the convictions and sentences.[19]  On April 8, 1998, the Louisiana First Circuit Court of Appeals affirmed the

---

[15]  St. Rec. Vol. 1 of 1, p. 25, Extract of Minutes, 11/18/96; St. Rec. Vol. 1 of 5, p. 205-248, Trial Transcript Vol. I, p. 4-47.

[16]  St. Rec. Vol. 1 of 5, p. 27-35, Extract of Minute Entry, 11/19-22/96; St. Rec. Vol. 4 of 5, p. 136-142, Verdict Forms (signed on the backs) and p. 1061-1071, Trial Transcript Vol. V, p. 76-86.

[17]  St. Rec. Vol. 1 of 5, p. 26-27, Extract of Minute Entry, 12/6/96; St. Rec. Vol. 4 of 5, p. 1073-1079, Sentencing Transcript, 12/6/96, p. 1-7.

[18]  St. Rec. Vol. 1 of 5, p. 26-27, Extract of Minute Entry, 12/6/96.

[19]  St. Rec. Vol. 1 of 5, p. 143, Notice of Appeal; St. Rec. Vol. 4 of 5, p. 1077, Sentencing Transcript, 12/6/96, p. 5; St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 97-KA-1150, 4/8/98.

4

convictions and sentences.[20]  Berry's conviction became final on April 22, 1998, when he failed

to seek rehearing or timely file a writ application with the Louisiana Supreme Court.[21]

On October 19, 1998, Berry filed an untimely pro se writ application with the Louisiana

Supreme Court, contending that his sentence was excessive.[22]  The Louisiana Supreme Court

denied the application on February 26, 1999, pursuant to La. Code Crim. Proc. Art. 930.3 and

*State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[23]

### E.    Post-Conviction Application

On March 13, 1999, Berry filed a Post-Conviction Application with the trial court

contending that:  1) the discriminatory practices in the selection of the foreperson totally violated

the integrity of all subsequent proceedings; 2) the grand jury composition was unconstitutional and

therefore rendered the indictment void; 3) the unconstitutional composition of the grand jury

coupled with the impermissible selection process, divested the trial court of subject matter

jurisdiction, thereby voiding the entire proceeding; 4) that his counsel was ineffective during the

hearing to determine the admissibility of the  DNA evidence; 5) that his counsel was ineffective

_____

[20]  St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 97-KA-1150, 4/8/98; *See State v. Berry*, 97-1150 (La. App. 1 Cir. 4/8/98), 728 So.2d 27 (table), *writ denied*, 98-2640 (La. 2/26/99), 738 So.2d 1063.

[21]  Berry's conviction became final under Louisiana law fourteen days after issuance of the appellate decision since no rehearing was sought and no timely writ application was made to the Louisiana Supreme Court.  La. Code Crim. Proc. Art. 922(B), (D).  A timely writ application is one filed within thirty days of the mailing of the intermediate appellate decision.  La. S. Ct. Rule 10 § 5; *see Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).  Berry's application was not filed with the Louisiana Supreme Court until October 19, 1998, and was therefore not timely.

[22]  St. Rec. Vol. 5 of 5, Pro Se Brief, 9/19/98.

[23]  St. Rec. Vol. 5 of 5, La. S. Ct. Opinion, 98-KH-2640, 2/26/99; *State v. Berry*, 98-2640 (La. 2/26/99), 738 So.2d 1063.  Article 930.3 sets forth the grounds which may be raised and considered in a post-conviction application, which does not include excessive sentence as a ground for relief.  The *Melinie* opinion reiterates this conclusion.

5

during cross-examination of the state's DNA expert because he allowed the expert to testify that only one person out of eight million matched the results.[24] On March 29, 1999, the trial court entered written reasons denying Berry's application as meritless.[25]

On March 24, 1999, Berry filed a writ application with the Louisiana First Circuit Court of Appeals, challenging the denial of his post-conviction application. The First Circuit denied the application on July 1, 1999.[26]

Thereafter, on August 5, 1999, Berry filed a writ application with the Louisiana Supreme Court, again challenging the lower court's denial of his post conviction application.[27] The Louisiana Supreme Court denied the writ application on January 28, 2000.[28]

### F.    Federal Habeas Corpus Petition

On February 25, 2000, Berry filed a petition for federal habeas corpus relief.[29] He contends that:[30]

1)    St. Tammany Parish discriminated in the selection of the grand jury and the grand jury foreperson;

---

[24] St. Rec. Vol. 5 of 5, Post Conv. Appl., 3/13/98, p. 2.

[25] St. Rec. Vol. 5 of 5, 22nd JDC Order, 3/24/99.

[26] St. Rec. Vol. 5 of 5, 1st Cir. Opinion, 99-KW-1017, 3/24/99.

[27] This filing date was obtained from the clerk's office of the Louisiana Supreme Court. The trial court's copy of this writ application is found in St. Rec. Vol. 5 of 5.

[28] St. Rec. Vol. 5 of 5, La. S. Ct. Opinion, 1999-KH-2378, 1/28/00;*State ex rel. Berry v. State*, 1999-2378 (La. 1/28/00), 753 So.2d 827.

[29] Rec. Doc. 1.

[30] The main difference between the state post-conviction application and this federal petition is that Berry included a summary of the appellate review of his post-conviction application in the procedural history of the federal brief.

6

2)   the composition of the grand jury violated the Equal Protection Clause, rendering the indictment void;

3)   the unconstitutional composition of the grand jury coupled with the impermissible selection process, divested the trial court of subject matter jurisdiction voiding the entirety of the proceedings against him;

4)   that his counsel was ineffective because he failed to preserve his right to challenge the indictment by filing a pretrial motion to quash the indictment;

5)   that his counsel was ineffective during cross-examination of the state's DNA expert during the suppression hearing and at trial.[31]

The State concedes that Berry's habeas application is timely under Title 28 U.S.C. § 2244(d).  It further concedes that all issues have been exhausted through the available state court processes.  *See Rose v. Lundy*, 455 U.S. 509 (1982); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

## III.    Grand Jury Selection Process

Berry raises several issues involving the grand jury and foreperson selection process in St. Tammany Parish.  However, the entire argument arises under one challenge to that process spurred by the United States Supreme Court decision in *Campbell v. Louisiana,* 523 U.S. 392 (1998), which was decided on April 21, 1998, one day before Berry's conviction became final.[32] In that case, the Supreme Court recognized that a white defendant has third-party standing to assert an Equal Protection and Due Process challenge, challenging the alleged discriminatory

---

[31] St. Rec. Vol. 5 of 5, Post Conv. Appl., 3/13/98, p. 2, and Memorandum in Support, p. 4.

[32] Because of this, retroactive application is not an issue in this case.

7

exclusion of blacks from the grand jury selection process pursuant to La. Code Crim. Proc. Art. 413(B).[33]

The State contends, however, that Berry's claims were denied in the state court as a result of his failure to contemporaneously object to the grand jury selection process, which is an independent and adequate state law ground not subject to review by this Court. The State further contends that Berry's claims are without merit because he has failed to establish that the grand jury selection process was the result of a discriminatory practice.

## A.     Procedural Default

The State contends that Berry's claims are procedurally barred from review by this Court. It contends that his counsel failed to file a motion to quash as required by La. Code Crim. P. Art. 531, thereby precluding federal review of the claim.[34]

It is settled that a federal court will not review a question of federal law decided by a state court, if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.) (citing *Harris v. Reed*, 489 U.S. 255, 260 (1989), *cert. denied*, 516 U.S. 1005 (1995). The "independent and adequate state law"

---

[33] The *Campbell* Court found that, although Campbell specifically challenged the discriminatory selection of the grand jury foreperson under the Louisiana system, the Court treated Campbell's claim as a challenge to the discriminatory selection of grand jurors. *Campbell*, 523 U.S. at 397. The Louisiana statute, La. Code Crim. Proc. Art. 413(B), which defines the method for grand jury selection in all parishes except Orleans, has recently been amended to prevent any potential for discrimination in light of *Campbell*. See La. Code Crim. Proc. Art. 413(B) (West Supp. 1999), amended by Acts 1999, No. 984 §1.

[34] Art. 531 provides as follows:
   All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of "not guilty and not guilty by reason of insanity," shall be urged by a motion to quash.

doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Id.*

This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

### B.   Independent and Adequate

The record shows that the last reasoned state court opinion regarding Berry's *Campbell* claims was rendered by the Louisiana trial court, when it denied Berry's Post-Conviction Application.  The state trial court rejected Berry's challenges to the selection process because he did not file a motion to quash prior to trial.  The Court further held that Berry waived any error that occurred in the selection process.[35]  The Louisiana First Circuit Court of Appeals and the Louisiana Supreme Court summarily denied Berry's writ applications without reasons.

The Court therefore presumes that the state appellate courts have relied upon the same grounds as the trial court did.   Therefore, if the trial court's decision was based upon an independent and adequate state law, Berry's habeas petition challenging the grand jury selection process is procedurally barred from review by this Court.

---

[35]  St. Rec. Vol. 5 of 5, 22nd JDC Order, 3/24/99.

Prior to *Campbell*, challenges to the selection of the grand juries in federal court have routinely been rejected where the claimant failed to contemporaneously object during the selection process. For example, in *Francis v. Henderson*, the Court held that the failure to file a pretrial motion to quash as required by Louisiana law stands as a waiver of the right to challenge the grand jury composition, which the federal courts must respect. *Francis v. Henderson*, 425 U.S. 536, 540-41 (1976)(citing *Michel v. Louisiana*, 350 U.S. 91, 97-98 (1955) (same) (discussed *infra*)). Also in *Williams v. Cain*, the Fifth Circuit held that the petitioner, who failed to file a pretrial motion to quash regarding his claim of discrimination in the grand jury foreperson selection process, was procedurally barred under Louisiana law from thereafter raising the claim, which in turn also barred federal review. *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997), *cert. denied*, 524 U.S. 934 (1998).

Louisiana courts have also consistently and evenhandedly applied this procedural bar in similar post-*Campbell* cases.[36] In *State v. Straughter*, the Louisiana Fourth Circuit Court of Appeals refused to consider the merits of the defendant's Equal Protection claim due to a discriminatory grand jury foreperson selection system. In so doing, the court noted that the defendant had failed to lodge objections or to file a motion to quash the indictment. *State v. Straughter*, 97-1161 (La. App. 4 Cir. 2/10/99), 727 So.2d 1283.[37] The defendant's writ application to the Louisiana Supreme Court was denied without reasons. *State v. Straughter*, 99-0704 (La. 7/2/99), 747 So.2d 14.

---

[36]*See Glover*, 128 F.3d at 902 (state procedural bar is independent and adequate when it is evenhandedly applied).

[37] The decision does not indicate whether Straughter was a Caucasian asserting this equal protection claim under *Campbell*.

In *State ex rel Roper v. Cain*, the Louisiana First Circuit Court of Appeals upheld the trial court's denial of Roper's post-conviction application in which he raised *Campbell* challenges. *State ex rel Roper v. Cain*, 99-2173 (La. App. 1 Cir. 10/26/99), 763 So.2d 1, 4-5. The *Roper* Court cited the pre-*Campbell* decision in *Deloch v. Whitley*, 684 So.2d 349 (La. 1996), in which the Louisiana Supreme Court reiterated the requirement that a challenge to grand jury composition or foreperson selection is waived if no pretrial motion to quash is filed. The Louisiana Supreme Court denied Roper's writ application without reasons on November 17, 2000. *State ex rel. Roper v. State*, 2000-0976 (La. 11/17/00), 2000 WL 1726637.

In *State v. Robinson*, the Louisiana Second Circuit Court of Appeals also considered whether *Campbell* challenges could be reviewed on appeal. *State v. Robinson*, 32-794 (La. App. 2 Cir. 3/1/00), 754 So.2d 311, 322. Also citing *Deloch supra*, the Second Circuit noted that procedural requirements must be met to preserve these grand jury challenges. The Court noted that Robinson had not filed a pre-trial motion to quash and therefore he had not preserved the objection, which precluded review of the claim on appeal. *Id*.

Louisiana courts have consistently enforced the waiver or procedural bar to *Campbell* claims where the claimant has failed to file a pretrial motion to quash under La. Code Crim. Proc. Art. 531 *et seq*. Article 531 is therefore an adequate and independent state law bar to *Campbell* claims raised in this Court on collateral review, unless he can show cause for his default <u>and</u> prejudice attributed thereto. Alternatively, the Court may review the claim if he demonstrates that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles v. Johnson*, 127 F.3d 409, 414 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 731-

11

32), *cert. denied*, 523 U.S. 1139 (1998); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

### C.   Cause and Prejudice

The record shows that Berry did not allege cause or prejudice in the instant application and his claims could therefore be barred from review by this Court. *Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1997). However, on September 7, 2000, this Court allowed Berry an opportunity to show cause and prejudice, or a fundamental miscarriage of justice, which would arise from the procedural default.[38]

Berry responded to the Court's inquiry, contending that he was prejudiced because his counsel erred in failing to file the motion to quash or object to the discriminatory method used during the selection of the grand jury foreperson.[39] He contends that his counsel's error constitutes cause and results in prejudice. He further contends that a fundamental miscarriage of justice will occur because his brother-in-law was the lead detective on the case, and the physical evidence at trial was questionable which constitutes a "colorable showing of innocence."

### 1.   Cause

To establish cause for his procedural default, Berry must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural

---

[38] Rec. Doc. 5.

[39] Rec. Doc. 7. This ineffective assistance of counsel claim is also addressed *infra*.

rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In the instant case, Berry contends that his counsel was responsible for the failure to file the motion to quash. He contends therefore that he was impeded from complying with the State's procedural rule.

However, the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default. *Id.* at 486.[40] Berry therefore has not demonstrated the existence of any objective factor external to the defense that impeded counsel's efforts to comply with the procedural rule requiring the filing of the motion to quash.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Berry has not alleged any specific prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977), *cert. denied*, 444 U.S. 868 (1979).[41]

---

[40] Prior to the Supreme Court decision in *Campbell*, the law as it existed at the time of petitioner's trial did not confer standing upon a white petitioner to challenge the systematic exclusion of blacks from selection as grand jurors.

[41]Berry also challenges the application of this state procedural bar, contending that his challenge calls into question the subject matter jurisdiction of the trial court. In support of this position, Berry refers the Court to the dissenting opinion in *Davis v. United States*, 411 U.S. 233 (1970), which suggests that Davis, a federal defendant, must have knowingly and intelligently waived his constitutional protections in order for his failure to object to a trial defect to serve as a bar to his request post-conviction relief. However, the Supreme Court held that denial of relief from application of the waiver provision, which requires that objections based on defects in the institution of prosecution or in the indictment be raised only by pre-trial motion, was not an abuse of discretion where the prisoner, at no stage of the proceeding attacked the grand jury's composition, the habeas petition was filed three years after conviction, the challenged jury selection method was well established, and there was no showing of actual prejudice. *Id.* at 244.

## 2.    **Fundamental Miscarriage of Justice**

A petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. To establish this, the petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.

To satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense").

Berry does not however point to any new or existing evidence which would create a reasonable doubt as to his guilt or establish his actual innocence. Berry suggests that certain pieces of evidence were tampered with by his ex-wife and/or brother-in-law which caused false DNA readings.

This contention, however, does not constitute evidence of his innocence or suggest lack of other sufficient evidence to convict him. Berry has therefore failed to establish that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Therefore, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903. Berry's *Campbell* claims are procedurally barred and therefore should be dismissed with prejudice.

14

**IV.**    **Ineffective Assistance of Counsel**

Berry contends that his trial counsel was ineffective, because he:

1)    failed to file a pretrial motion to quash the indictment based on the discriminatory grand jury and foreperson selection process; and

2)    failed to properly and effectively cross-examine the State's DNA expert during the pretrial suppression hearing and at trial.

Under a broad reading of the petition and the arguments relative to this second claim, Berry also suggests that his counsel was ineffective, because he failed to call a defense DNA expert to rebut the opinions of the State's expert.  Berry argues that his counsel's performance fell below the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which is disputed by the State.

**A.**    **Standard of Review**

Berry' application was filed on July 12, 1999, and is therefore governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[42]  Under the AEDPA, the federal court's standard of review for habeas corpus petitions is governed by 28 U.S.C. § 2254(d) and the United States Supreme Court's recent decision in *Williams. v. Taylor*, 529 U.S. 362 (2000).

Title 28 U.S.C. § 2254(d)(1) of the AEDPA provides that a state court's decision denying relief may be reversed only if the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the Supreme Court of the United States.

---

[42]  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the revised standards of review to be used by federal courts in considering habeas corpus petitions under 28 U.S.C. § 2254 and state court determinations of questions of fact, of law and of mixed fact and law. *See* Pub. L. No. 104-132, 110 Stat. 1214; *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

*Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir.) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir.), *cert. denied*, 121 S.Ct. 122 (2000)), *cert. granted*, 121 S.Ct. 563 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.), *pet. for cert. filed*, No. 00-5947 (Aug. 28, 2000).

A state court's decision can be "contrary to" federal law either if (1) it fails to apply the correct controlling authority or (2) it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case but reaches a different result. *Williams,* 120 S.Ct. at 1519-20.   A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts, in a way that is objectively unreasonable or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Id.* at 1520.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Id.*; *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  However, the Court noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Wright*, 505 U.S. at 305; *see also Chambers v. Johnson*, 218 F.3d 360 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000).

Moreover, factual findings are presumed correct  and the court must give deference to the state court's findings, unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2);  *see Hill*, 210 F.3d at 485.

The record shows that these claims were addressed by the state trial court on the merits under the standards set forth in *Strickland*.[43]   However, while the state trial court cited *Strickland* in its opinion, it offered no analysis leading to the conclusion that the *Strickland* test was met by counsel's performance.[44]   The record further confirms that the state circuit and supreme courts denied Berry's Application  for the Issuance of a Writ without reasons. Therefore, the Court is not required to give deference to the state courts' findings.

**B.   Strickland Standard**

Berry contends that the trial court violated the Supreme Court's decision in *Strickland supra*, because his counsel failed to file a motion to quash the grand jury indictment, resulting in prejudice to his right to seek relief on post-conviction review.   *Strickland* is clearly a rule of law that was established at the time Berry's state court conviction became final.   *See* 28 U.S.C. § 2254(d)(1).

To obtain federal *habeas* relief on an ineffective assistance of counsel claim, Berry must have suffered actual and substantial disadvantage or prejudice from his counsel's ineffective performance.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   That is, Berry must affirmatively prove that his counsel's performance was objectively unreasonable, and but for his counsel's errors, the outcome of the proceeding would have been different.   *Id.*

---

[43]St. Rec. Vol. 5 of 5, 24th JDC opinion, 3/24/99.

[44]With respect to these claims, the trial court entered the following reasons:
Petitioner claims that he received ineffective assistance of counsel.  A mere review of the file indicated that neither of the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) is met.  The fact that a motion to quash was not filed does not alter the fact that counsel's performance was not deficient and petitioner received a fair trial.  Petitioner maintains ineffective assistance of counsel in regard to DNA matters, mere inspection shows adequate representation under the *Strickland* test.  *Id.*

17

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994).

### 1.     Failure to File a Motion to Quash the Indictment

Berry first contends that his counsel was ineffective for failing to file a motion to quash, which may have preserved his challenge to the grand jury composition. He contends that his counsel: (1) should have known of the discriminatory history of St. Tammany's grand jury selection process; and (2)  had a duty to investigate the grand jury composition and file the appropriate motion to quash.

Under Louisiana law, a motion to quash a grand jury indictment may be lodged if, *inter alia*, "the manner of selection of . . . the grand jury venire, or the grand jury was illegal."[45] However, federal courts have recognized that whether a motion to quash should be filed in such an instance is generally a matter of professional judgment left to the discretion of counsel.

---

[45]La. Code Crim. Proc. Art. 533 provides as follows:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)     The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2)     An individual grand juror was not qualified under Article 401.
(3)     A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4)     Less than nine grand jurors were present when the indictment was found.
(5)     The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

*Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (citing *Michel v. Louisiana*, 350 U.S. 91 (1955)).[46]

In *Michel*, the United State Supreme Court considered Louisiana's past discriminatory practice of excluding women from petit juries. The Supreme Court held that failure of counsel to move to quash the indictment stemming from an unconstitutionally impaneled jury was not deficient performance or unconstitutionally prejudicial. *Michel*, 350 U.S. at 95.

Similarly, the law at the time of Berry's prosecution did not clearly define a white defendant's third party challenge to the systematic discrimination against blacks in the grand jury or foreperson selection process. A point which is conceded by Berry. The Court finds that Berry has not established that the failure to file a motion to quash was outside of the reasonable discretion afforded counsel.

Furthermore, Berry has made no showing of the composition of <u>his</u> grand jury. He also has not identified the race of the foreperson so as to question counsel's performance in his particular case. *See State ex rel. Roper v. Cain*, 99-2173 (La. App. 1 Cir. 10/26/99), 763 So.2d.1. The Court finds that state court's application of the *Strickland* standards to the facts before it were reasonable.

---

[46] In *Michel*, the United State Supreme Court considered Louisiana's discriminatory practice of excluding women from juries. The Court held that failure of counsel to move to quash the indictment stemming from an unconstitutionally impaneled jury was not deficient or prejudicial. *See Michel supra*, at 95.

### 2.   DNA Expert Testimony

Berry also contends that his counsel was ineffective (1) in the manner in which he challenged the admissibility and reliability of the State's DNA expert opinion; and (2) when he failed to call a DNA expert on behalf of the defense.

### a.   Failure to Challenge State's DNA Expert

Berry contends that his counsel was ineffective, because he failed to question the State's DNA expert regarding specific test results and specific percentages of the population used in the test findings. He contends that the State's expert could not account for the reliability of the samples used to conduct the DNA tests and therefore relied on invalid test results to reach her conclusions. He further contends that if his counsel had engaged in better cross-examination of the DNA expert at trial, it would have come to light that his ex-wife most likely tampered with the evidence used in the DNA analysis.

The record shows that during the pretrial hearing, Berry's counsel questioned the State's expert regarding the chain of possession of the clothing and samples used by Montgomery's laboratory to conduct the DNA tests.[47] The expert testified that some of the items were presented to her in April or May 1996 by a police detective. She conceded that she did not know when the items were obtained or where the items were before they were presented to her office. The record further shows that during the trial, Berry's counsel questioned the expert regarding errors in testing and contamination of the items tested.[48]

---

[47]  St. Rec. Vol. 1 of 5, p. 244-245, Trial Transcript Vol. I, p. 43-44.

[48]  St. Rec. Vol. 4 of 5, p. 761-777, Trial Transcript Vol. III, p. 119-135.

Further, Berry's counsel questioned the expert at both the pretrial hearing and trial regarding the likelihood of errors made during testing and the reliability of the statistical information used to reach the percentages and exclusion factors noted by her.[49] The record even shows that Berry's counsel filed a pretrial motion in limine to exclude certain test results, as it appeared to him that the laboratory had failed to follow its own procedure for verifying the results through a supervisor.[50]

Berry has therefore failed to identify a deficiency in his counsel's performance. Furthermore, Berry cannot establish that he was prejudiced as a result of his counsel's performance.

### b.    Failure to Call a Rebuttal DNA Expert

Under a broad reading of the complaint, Berry also contends that his counsel was ineffective for failing to call a defense DNA expert to counter the opinions rendered by the State's expert. The State, on the other hand, contends that counsel's performance was not deficient and otherwise fell within the realm of sound trial strategy.

Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified to are largely speculative. *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Similarly, counsel's failure to hire an expert does not fall outside a range of reasonable

---

[49]  St. Rec. Vol. 1 of 5, p. 239-244, Trial Transcript Vol. I, p. 38-43.

[50]  St. Rec. Vol. 1 of 5, p. 205, Trial Transcript Vol. I, p. 4.

effectiveness under *Strickland*. *White v. Ieyoub*, 25 F.3d 245, 250 n.29 (5th Cir. 1994); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

To evaluate the effect of counsel's alleged error, Berry would have to establish that the failure to call a defense expert rendered the trial "unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687). Furthermore, he would have to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Berry, however, has made no such showing. Therefore, he has failed to overcome the presumption that counsel's decision not to call a DNA expert on behalf of the defense constituted a reasonable trial strategy. The Court therefore holds that the state court's application of *Strickland* was reasonable pursuant to 2244(d)(1). Berry's ineffective assistance claims should be denied.

## V.    **Recommendation**

**IT IS THEREFORE RECOMMENDED** that David Glenn Berry's Petition for Habeas Corpus relief be **DISMISSED WITH PREJUDICE** for the reasons assigned herein.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 26th day of Jan, 2001.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

23